**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 20-24676-Civ-GAYLES/TORRES

N.A.S. and MARCUS HILES

    Plaintiffs,

v.

MORADA-HAUTE FURNITURE
BOUTIQUE LLC, FERNAN HERNANDEZ,
HOLGER ODENSTEIN, and BARBARA PUCHE,

    Defendants.

_____/

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION**
**TO DISMISS THIRD AMENDED COMPLAINT**

    This matter is before the Court on Morada-Haute Furniture Boutique LLC's

("Morada"), Fernan Hernandez's ("Hernandez"), Holger Odenstein's ("Odenstein"),

and Barbara Puche's ("Puche") ("Defendants") motion to dismiss N.A.S.'s and Marcus

Hiles' ("Plaintiffs") Third Amended Complaint. [D.E. 197]. Plaintiffs filed a response

on May 26, 2022, [D.E. 198], to which Defendants replied on June 2, 2022. [D.E.

200]. Therefore, the motion is now ripe for disposition.[1] After careful consideration

of the motion, response, reply, relevant authority, and for the reasons discussed

below, Defendants' motion should be **GRANTED in part and DENIED in part**.

_____

[1] On July 26, 2021, the Honorable Darrin P. Gayles referred the case to the
Undersigned for a ruling on all pre-trial, non-dispositive matters, and a report and
recommendation on all dispositive matters.   [D.E. 85].

## I.      BACKGROUND AND PROCEDURAL HISTORY

The Court is tasked with determining the viability of the claims asserted in what is now the third complaint filed in this case.   The factual background of this lawsuit has been outlined in detailed in this Court's prior rulings on the record, *see* [D.E. 104, 154, 178], so we will not restate them in full here.   In general terms, this lawsuit arises from the alleged breach of an oral contract executed between Marcus Hiles and his wife, on the one hand, and Morada and its founders, Odenstein and Hernandez, on the other.   According to Plaintiffs, Mr. Hiles and his wife hired Morada to provide interior design services and manufacture certain high-end furniture for Plaintiffs' luxury apartment unit in Miami.

Originally, Mr. Hiles' wife filed this suit alone against Morada, Odenstein, and Hernandez, and more than a year later Mr. Hiles was joined as party plaintiff to this lawsuit pursuant to Fed. R. Civ. P. 19(a), triggering the filing of a third amended complaint.   In relevant part, the procedural history of this case is as follows.

On November 13, 2020, Mr. Hiles' wife ("N.A.S.") commenced this action asserting recission, breach of contract, fraud in the inducement, fraud, and invasion of privacy claims against Morada.   [D.E. 1].   On March 2, 2021, N.A.S. filed an amended complaint adding Odenstein and Hernandez as defendants and alleging the following six-counts:   rescission against Morada (Count I), breach of contract against Morada (Count II), fraud in the inducement against all defendants (Count III), fraud against all defendants (Count IV), ultra vires fraud/fraud in the inducement against Odenstein and Hernandez (Count V), and invasion of privacy against all defendants (Count VI).  [D.E. 28].

Pursuant to Defendants' motion to dismiss the amended complaint, the Undersigned issued a Report and Recommendation recommending dismissal of Counts I (recession), III (fraud in the inducement), IV (fraud), and V (ultra vires fraud) on August 24, 2021.   [D.E. 104].   This Court affirmed and adopted such Report and Recommendation on October 12, 2021, effectively dismissing all of these claims **with prejudice**.   [D.E. 126].

On August 2021, the parties filed cross-motions for summary judgment [D.E. 98, 99, 101, 102].   On December 20, 2021, the Undersigned issued a Report and Recommendation denying Plaintiff's motion for partial summary judgment and granting Defendants' motion as to Count VI (invasion of privacy).   [D.E. 154].   This Court affirmed and adopted *in full* that summary judgment recommendation on February 25, 2022.   [D.E. 174].   Prior to the adoption of that Report and Recommendation, on January 18, 2022, the Court found good cause to grant N.A.S. leave to file a Second Amended Complaint ("SAC").   [D.E. 166].   N.A.S. filed her SAC on January 31, 2022.   [D.E. 167].   The SAC re-alleged the breach of contract claim (Count I), as well as the invasion of privacy claim (Count II) on which the Undersigned had previously recommended an entry of summary judgment.   The SAC also alleged a third and new claim against Morada for violation of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA) (Count III).

On March 21, 2022, N.A.S. filed a motion for reconsideration asking the Court to reconsider its prior Order affirming and adoption the Undersigned summary judgment Report and Recommendation.   [D.E. 179].   That motion remains pending.

On December 02, 2021, Defendants filed a motion to join N.A.S.'s husband, Marcus Hiles, to this action as an indispensable party pursuant to Fed. R. Civ. P. 19(a)(1).   [D.E. 143].   On March 16, 2022, the Undersigned entered an Order granting Defendants' motion and compelling joinder of Mr. Hiles to this action on the grounds that (i) he was a joint obligee to the oral contract at the crux of this litigation, and (ii) he was involved in a concurring state court action where he asserted claims virtually identical to those pleaded by his wife in this Court.   [D.E. 178].   Through that Order and its subsequent Clarification, [D.E. 193], the Undersigned put Plaintiffs on notice that, although Mr. Hiles was entitled to assert any claims in this action that had not already been disposed of in the state action, this Court had already rendered final judgment on several of his wife's claims that overlapped with the claims he intended to assert.   *Id.*   The Order also instructed Plaintiff to file a Third Amended Complaint naming Mr. Hiles as a plaintiff.   *Id.*

On April 28, 2022, Plaintiffs filed the Third Amended Complaint ("TAC"). [D.E. 195].   The TAC alleges eleven different counts and adds a new Defendant, Barbara Puche.   Specifically, the TAC asserts: two counts for breach of contract (Counts I and IV), three counts for invasion of privacy (Counts II, VII, and XI), two counts for violation of the FDUTPA (Counts III and VIII), fraud (Count V), negligent misrepresentation (Count VI), unjust enrichment (Count IX), and conspiracy to invade privacy (Count X).   On May 12, 2022, Defendants filed a motion to dismiss asking this Court to dismiss Plaintiffs' TAC.   [D.E. 197].

## II.    ANALYSIS

Defendants' motion asserts multiple grounds in favor of dismissal. Specifically, Defendants argue that: (i) Plaintiffs' fraud and invasion of privacy claims (Counts II, V, VII, and XI) are subject to dismissal under the doctrine of res judicata or, alternatively, collateral estoppel; (ii) Plaintiffs' FDUTPA claims (Counts III and VIII) fail to meet the pleading requirements embodies in Rule 9(b); (iii) Plaintiffs' claim of civil conspiracy (Count X) fails to state a cause of action; and (iv) Plaintiffs' tort claims (Counts II, VII, XI, V, VI, and X) are barred by Florida's independent tort doctrine.   We address each of these arguments in turn.

### A.   _Plaintiffs' Fraud and Invasion of Privacy Claims (Counts II, V, VII, and XI) are Barred by Res Judicata_

Res judicata precludes "a subsequent claim when a court of competent jurisdiction entered a final judgment on the merits of the same cause of action in a prior lawsuit between the same parties." _Pleming v. Universal-Rundle Corp._, 142 F.3d 1354, 1356 (11th Cir. 1998).   "It is well settled that res judicata turns primarily on the commonality of the facts of the prior and subsequent actions, not on the nature of the remedies sought." _In re Piper Aircraft Corp._, 244 F.3d 1289, 1295 (11th Cir. 2001) (emphasis in original).   Res judicata therefore "extends not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same 'operative nucleus of fact.'" _Id._ (quoting _Olmstead v. Amoco Oil Co._, 725 F.2d 627, 632 (11th Cir. 1984)); _see also Topps v. State_, 865 So. 2d 1253, 1255 (Fla. 2004) (noting that res judicata bars not only claims that were raised, but also claims that could have been raised in the prior action).   "The idea underlying res judicata is that if a matter has already been decided, the petitioner has already

had his or her day in court, and for purposes of judicial economy, that matter generally will not be reexamined again *in any court* (except, of course, for appeals by right)." *Id.* (emphasis in original).

"For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits." *See Taylor v. Sturgell*, 553 U.S. 880, 891 n.4 (2008) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001)). "Under Florida law, res judicata applies where there is: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality [or capacity] of the persons for or against whom the claim is made." *Andela v. Univ. of Miami*, 692 F. Supp. 2d 1356, 1371 (S.D. Fla. 2010) (quotation marks and citation omitted).

We agree with Defendants that this Court's prior orders dismissing *with prejudice* and entering summary judgment on N.A.S.'s fraud and invasion of privacy claims preclude Plaintiffs from reinserting those same claims into this litigation through their Third Amended Complaint.

Plaintiffs' Response argues that res judicata is inapposite to this case because (i) the doctrine only applies when there are two separate lawsuits, (ii) public policy discourages its implementation here, and (iii) the addition of new parties to this lawsuit forecloses its application. [D.E. 198, pp. 5-8]. We find these arguments unpersuasive. While res judicata is usually invoked in cases involving two different lawsuits, the doctrine's fundamental purpose of promoting the finality of judgments applies with full force in a case such as this one, where Plaintiffs want to relitigate claims that are factually and legally identical to claims this Court has already fully

adjudicated on the record.   *See, e.g., Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017) (observing that the doctrine of res judicata "focuses on protecting the finality of judgments") (citation omitted); *Stevenson v. Int'l Paper Co., Mobile, Alabama*, 516 F.2d 103, 109 (5th Cir. 1975) (res judicata "rests on the finality of judgments in the interest of the end of litigation and it requires that the fact or issue adjudicated remain adjudicated.") (citation omitted).

As noted above, the record in this case reflects that this Court has already dismissed with prejudice N.A.S.'s fraud claims, [D.E. 126], and has entered summary judgment on N.A.S.'s invasion of privacy claim in favor of Defendants.   [D.E. 174]. To be clear, these rulings were preceded by months of discovery between N.A.S. and Defendants, including the production of documents, the holding of discovery hearings, and the taking of at least one deposition. [D.E. 58, 82, 95].   In light of this extensive record and the substantial amount of resources this Court has allocated to the adjudication of N.A.S.'s claims, we cannot agree with Plaintiffs' assertion that this Court's prior orders dismissing with prejudice the fraud claims and entering summary judgment on the invasion of privacy claim do not constitute final judgments with preclusive effect for the purposes of res judicata.   *See Lobo v. Celebrity Cruises, Inc.*, 704 F.3d 882, 893 (11th Cir. 2013) (dismissal "was an adjudication on the merits because the order was a Rule 12(b)(6) dismissal with prejudice.") (citation omitted); *Bazile v. Lucent Techs.*, 403 F. Supp. 2d 1174, 1181 (S.D. Fla. 2005) (holding that "[a] judgment rendered upon a motion for summary judgment is a final judgment on the merits and is entitled to the full preclusive effect of any final judgment.") (citation omitted).

7

Plaintiffs' public policy argument against the application of res judicata to the invasion of privacy claims is also unavailing. Plaintiffs' argument is that because the Court has not yet ruled on N.A.S.'s motion for reconsideration of the order adopting the Undersigned's summary judgment Report and Recommendation on the invasion of privacy claim, "a mechanical dismissal of Count II would contravene public policy." [D.E. 198, p. 7]. First, the pending motion for reconsideration has no bearing on our resolution of the pending motion. The District Judge already adopted our earlier Report and Recommendation and dismissed this claim. Our disposition here is based on that Order. If relief is granted on the motion for reconsideration, of course, then the District Judge can adjudicate any timely objections to this Report based on such a material change in the record.

Second, based on the present status of the record our application of res judicata here is not a mechanical exercise of law; quite the contrary, our holding turns on this Court's awareness of the extensive record behind this case, and the highly wasteful and prejudicial effects that allowing Plaintiffs to reassert fraud and invasion of privacy claims that this Court has already fully adjudicated would have on Defendants.

Here, the elements of res judicata are clearly met and preclude Plaintiffs from reasserting these claims in their Third Amended Complaint. "Identity of the causes of action is established where the facts which are required to maintain both actions are identical." *Gold v. Bankier*, 840 So. 2d 395, 397 (Fla. 4th DCA 2003) (quotation marks and citation omitted). *See Tyson v. Viacom, Inc.*, 890 So. 2d 1205, 1212 (Fla. 4th DCA 2005) ("Res judicata defines a cause of action in terms of identical facts.").

In her First Amended Complaint, N.A.S. asserted fraud in the inducement, fraud, ultra vires fraud, and invasion of privacy claims against Morada, Odenstein, and Hernandez.   [D.E. 28].   N.A.S.'s claims were predicated on the facts surrounding the alleged oral contract between Plaintiffs and Defendants for the furnishing and design of Plaintiffs' apartment unit, as well as Defendants' alleged conduct in breach of that contract, including several misrepresentations and their unauthorized entry into Plaintiffs' apartment.   A plain reading of the Third Amended Complaint makes clear that the fraud and invasion of privacy claims reasserted therein are based on the same exact facts supporting N.A.S.'s First Amended Complaint: same timeframe; same contract; same breaches; same conduct; same parties; and same damages.[2] *Compare* [D.E. 28] *with* [D.E. 195]; *see also In re Piper Aircraft Corp.*, 244 F.3d 1289, 1295 (11th Cir. 2001) ("It is well settled that res judicata turns primarily on the commonality of the facts of the prior and subsequent actions, not on the nature of the remedies sought.").

This is not a case where Plaintiffs allege similar claims to the ones this Court previously adjudicated but that arise from events that took place at some different time and involve different parties.   Here, the Third Amended Complaint realleges claims that are *identical* in form and substance to those we previously adjudicated. Simply put, Plaintiffs want to have a second bite at the apple.   *See Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1270 (11th Cir. 2002) (applying res judicata to

---

[2] As we explain in more detail below, Plaintiffs' introduction of defendant Puche in the Third Amended Complaint is immaterial for the purposes of our res judicata analysis because Puche was in privity with Morada, Odenstein, and Hernandez at all relevant times in this lawsuit.

claims that "involve[d]e breaches of the same contract, committed by the same party and involving the same general type of conduct."); *Solis v. Glob. Acceptance Credit Co., L.P.*, No. 13-CV-23060, 2014 WL 12649792, at *3 (S.D. Fla. June 25, 2014), *aff'd*, 601 F. App'x 767 (11th Cir. 2015) (applying res judicata to claims that were "nearly identical to those contained in the Amended Complaint" previously dismissed by the Court).

The identity of the parties requirement is also met because both the First Amended Complaint and Plaintiffs' Third Amended Complaint involve the same exact parties or their privities.   "[A] person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative." *Udick v. Harbor Hills Dev., L.P.*, 179 So. 3d 489, 492 (Fla. 5th DCA 2015) (quotation marks and citation omitted).   In assessing privity or virtual representation, "[s]everal factors are relevant, including participation in the first litigation, apparent consent to be bound, apparent tactical maneuvering, [and] close relationships between the parties and nonparties." *Jaffree v. Wallace*, 837 F.2d 1461, 1467 (11th Cir. 1988) (quotation marks and citation omitted).

It is clear that the interests of N.A.S. and her husband, Mr. Hiles, have always been closely aligned, if not identical.   It is also evident that Mr. Hiles has enjoyed a significant level of participation in this action from the get-go.   As we noted in our prior order compelling Mr. Hiles' joinder to this action, [D.E. 145], Mr. Hiles was not only a joint obligee of the alleged oral contract at the crux of this litigation, but he

was also the plaintiff with the greater degree of involvement in the negotiation and
execution of the financial terms and conditions of the alleged oral agreement:

> Q. So did -- how would you communicate with Morada?
> A. Well, Marcus would usually set up the meetings because I let Marcus
> handle the financial aspects of things, in terms of costs and things like
> that. He's well versed in construction items and how much things cost,
> and I'm not. . . . So he was more of the person that was the go-to point
> person to talk about prices and costs and things like that.

[D.E. 155-1 at 12:24-13:8 (Deposition of Plaintiff)].

That Mr. Hiles' interests have always been aligned with his wife's and that he
has enjoined a significant degree of participation in this lawsuit from its very
inception is evident: (i) he drafted and filed a sworn declaration in support of his wife's
motion for summary judgment in this lawsuit ([D.E. 98-1]); (ii) he led settlement
negotiations with Defendants which were later used by N.A.S. to assert privilege in
this action ([D.E. 180]); and (iii) N.A.S. and Mr. Hiles were represented by the same
counsel and their respective briefs in state and federal court were virtually identical
in both form and substance.   *Compare* [D.E. 28, pp. 2-6] and [D.E. 167, pp. 2-6, 9-10]
*with* [D.E. 143-1, pp. 2-7] and [D.E. 143-2, pp. 10-16].   Plaintiffs do not, and cannot
in good faith, argue that Mr. Hiles has been so uninvolved in this lawsuit as to
foreclose a finding of privity between him and his wife N.A.S.   Rather, as N.A.S.'s
own lawyer conceded during discovery proceedings in this case, for all practical
purposes Mr. Hiles has been a Plaintff in this lawsuit from the very beginning.
*See* [D.E. 64, Discovery Hearing Transcript, at 10:13-17] (MR. CHAIKEN: The
**plaintiff is a husband and wife**. They are the owners of this particular
condominium. They are the direct beneficiaries of a trust. The trust is the named

purchaser of the condominium, but they are the direct beneficiaries of the trust at issue.) (emphasis added).

Accordingly, we hold that given the context and factual background of this case, Mr. Hiles and N.A.S. were in privity for the purposes of res judicata. *See Mesa Petroleum Co. v. Coniglio*, 787 F.2d 1484, 1489–90 (11th Cir. 1986) (wife was precluded from litigating claims her husband previously had litigated); *Cotton v. Federal Land Bank of Columbia*, 676 F.2d 1368, 1369–71 (11th Cir. 1982) (husband was precluded from litigating claims his wife previously had litigated); *Udick,* 179 So. 3d at 492 ("It is clear that the interests of Mr. Bell, Ms. Line, and Mr. Udick were closely aligned, if not identical, though their legal theories may have differed."); *cf. Cook v. State*, 921 So. 2d 631, 635 (Fla. 2d DCA 2005) ("A person who was not a named party to an action will nonetheless be subject to collateral estoppel arising from that action if that person was in privity with a party or virtually represented by a party.").

Plaintiffs attempt to salvage their fraud and invasion of privacy claims by adding a new defendant, Barbara Puche, to their Third Amended Complaint. However, the addition of a new defendant will not immunize Plaintiffs from the preclusive effects of res judicata, particularly in a case such as this one, where the allegations arise from the same set of facts and the added defendant was in privity with the defendants involved in our prior adjudication of the claims. *See Ardis v. Anderson*, 662 F. App'x 729, 732 (11th Cir. 2016) ("Indeed, the Eleventh Circuit has recognized that a party 'may not avoid the application of re[s] judicata by adding new parties.'") (quoting *Endsley v. City of Macon, Ga.*, 321 F. App'x 811, 814 (11th Cir. 2008)).

As noted earlier, Plaintiffs' fraud and invasion of privacy claims arise from the same exact contract and nucleus of operative fact as did N.A.S.'s dismissed fraud and invasion of privacy claims.[3]   Further, it is undisputed that Barbara Puche, an employee of Morada, has been an agent of the defendants for all relevant purposes, and that her alleged invasion of privacy arose from her actions in furtherance of that role.   [D.E. 195, ¶ 26] ("Indeed, at MORADA's specific instructions, MORADA and its agent PUCHE caused a photography crew, . . . on more than one occasion to enter the Miami residence unauthorized[.]").   Accordingly, Plaintiffs' view that the addition of Puche as a new party to this action prevents this Court from applying res judicata on the fraud or invasion of privacy claims as to them rings hollow. *See Hilliard v. Gutierrez*, 2021 WL 2712122, at *6 (S.D. Fla. July 1, 2021) ("[P]laintiff cannot avoid the preclusive effects of the res judicata doctrine simply by naming additional defendants in the new action, where the plaintiff's subsequent claims arose from the same facts as those at issue in the prior action and could therefore have been brought previously."); *Citibank, N.A. v. Data Lease Fin.* Corp., 904 F.2d 1498, 1502 (11th Cir. 1990) (holding "that employer-employee or principal-agent relationships

---

[3] *Compare* [D.E. 28, ¶ 49] ("Defendants procured a key to Plaintiff's residence under false pretense and then intruded on Plaintiff's privacy.  These actions include the physical invasion of the Miami residence via the presence of a multiparty camera crew and a staging crew conducting a photoshoot without authorization[.]") *with* [D.E. 195, ¶ 104] ("Upon information and belief, using a key given to her by ODENSTEIN and HERNANDEZ, or by otherwise gaining access outside the scope of authorized access to the Miami residence, PUCHE intentionally intruded on Plaintiffs' solitude, seclusion, or private affairs on multiple occasions. ODENSTEIN and HERNANDEZ procured a key to Plaintiffs' residence under false pretenses and then, with PUCHE present and directing the photoshoots, intruded on Plaintiffs' privacy).

may ground a claim preclusion defense, regardless of which party to the relationship was first sued[.]").

We are also unpersuaded by Plaintiffs' claim that the Court should not apply a res judicata defense at the motion to dismiss stage: "[e]ven if the procedural context were ambiguous, this Court should not dismiss these counts on the basis of an affirmative defense." [D.E. 198, p. 7]. This argument is foreclosed by precedent providing that, when the face of the complaint makes it clear that res judicata will be a viable defense, "the court need not wait and see if the defense will be asserted in a defensive pleading." *Robinson v. Burns*, 2008 WL 11479253, at *1 (S.D. Fla. Jan. 11, 2008), *report and recommendation adopted,* 2008 WL 11479254 (S.D. Fla. Jan. 31, 2008), *aff'd,* 292 F. App'x 832 (11th Cir. 2008). A plain reading of the Third Amended Complaint makes it clear that res judicata will be a viable defense in this case because, as noted earlier, Plaintiffs seek to reintroduce into this litigation claims that this Court has already determined find no support in the set of alleged facts and the evidentiary record available to Plaintiff and her husband. This sort of attempt at having a second bite at the apple, though understandable from a litigant's viewpoint, is exactly what the judiciary's application of res judicata is meant to prevent. *See Solis v. Glob. Acceptance Credit Co., L.P.*, 601 F. App'x 767, 771 (11th Cir. 2015) (affirming res judicata dismissal and holding that "the district court properly considered its own records in resolving the defendants' motion to dismiss."); *id.* ("Because the underlying core of facts is the same in both cases, [Plaintiffs] could have effectively litigated her new or altered [claims] with her [original claims].").

In sum, the Third Amended Complaint realleges fraud and invasion of privacy counts that are identical to claims this Court has already fully adjudicated and, as such, are precluded by res judicata.   Accordingly, Defendants' motion to dismiss should be **GRANTED** as to Counts II, V, VII, and XI.   Further, because Count XI is the only count brought by Plaintiffs against Defendant Barbara Puche, this defendant should be dismissed from the lawsuit.

### B.   *Plaintiffs' Fail to State a Claim of Civil Conspiracy (Count X)*

Defendants' motion argues that Plaintiffs' conspiracy count fails on two separate grounds: (i) a civil conspiracy cannot survive without a predicate, underlying tort supporting it; and (ii) Plaintiffs have failed to sufficiently plead a conspiracy. We agree on both counts.

First, Plaintiffs' response did not address Defendants' first argument noting that without a valid invasion of privacy claim Plaintiffs' conspiracy claim could not survive.   Rather, Plaintiffs simply assumed this Court should not dismiss the conspiracy count because (i) N.A.S.'s motion for reconsideration was still pending before the Court, and (ii) Mr. Hiles' invasion of privacy claim was not barred by res judicata.   As discussed above, both of these assumptions were mistaken.

Plaintiffs' invasion of privacy counts are barred by res judicata, and without an underlying cause of action serving as predicate there cannot be a conspiracy.   *See Corey Airport Servs., Inc. v. Clear Channel Outdoor, Inc.*, 682 F.3d 1293, 1296 (11th Cir. 2012) ("Without an underlying violation [ ], no valid conspiracy claim can be shown in this case[.]" ); *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1316 (S.D. Fla. 2014) ("Neither Florida nor Nevada recognizes an independent cause of action

for civil conspiracy; rather, the plaintiff must allege an underlying illegal act or tort

on which conspiracy is based."); *Hercules Cap., Inc. v. Gittleman*, 2018 WL 395489, at

*24 (S.D. Fla. Jan. 12, 2018) ("An actionable conspiracy requires an actionable

underlying tort or wrong") (citation omitted).

But even if Plaintiffs' conspiracy could stand as a separate and autonomous

tort, we find that Plaintiffs' Third Amended Complaint fails to sufficiently plead a

conspiracy consistent with the pleading standards of Rule 9(b).   Because Plaintiffs'

civil conspiracy to invade privacy sounds in fraud, it is subject to the heightened

pleading standard of Rule 9(b).   Rule 9(b) provides that "[i]n allegations of fraud or

mistake, a party must state with particularity the circumstances constituting fraud

or mistake" but that "[m]alice, intent, knowledge, and other conditions of a person's

mind shall be averred generally."   Fed. R. Civ. P. 9(b).   Rule 9(b) is satisfied if a

plaintiff pleads:

> (1) precisely what statements were made in what documents or oral
> representations or what omissions were made, and (2) the time and
> place of each such statement and the person responsible for making (or,
> in the case of omissions, not making) same, and (3) the content of such
> statements and the manner in which they misled the plaintiff, and (4)
> what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v.*

*Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)).   In

other words, this requires a plaintiff to establish the 'who, what, when, where, and

how' of the fraud."   *Ceithaml v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1353

(S.D. Fla. 2016) (citing *Garfield v. NDC Health Corp.*, 466 F. 3d 1255, 1262 (11th Cir.

2006)).

Plaintiffs allege that there was either an implied or express agreement among Morada, Odenstein, and Hernandez to invade their privacy.  Yet, the Complaint provides no other details regarding such alleged agreement and is devoid of any specific allegations of fact as to the formation or operation of the alleged scheme. Other than generally stating that Plaintiffs provided Defendants with keys to the apartment so that they could finish their work on the pending orders and describing the photoshoot that allegedly took place in Plaintiffs' apartment, [4] the Third Amended Complaint does nothing to substantiate with specific allegations the existence of an agreement between Defendants.  The complaint is clearly missing the "when" and "where" requirements as to the creation of the conspiracy.  *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1064 (11th Cir. 2007) (affirming the dismissal of a conspiracy to commit fraud under Rule 9(b) because the claim only had conclusory allegations); *Banc of Am. Sec. LLC v. Stott*, 2005 WL 8156027, at *6 (S.D. Fla. Aug. 30, 2005) (dismissing conspiracy count where "[Plaintiff] fails to allege the existence of an agreement to engage in fraudulent activity or the date of execution of such agreement.").  While the Court could guess that the agreement to invade Plaintiffs' privacy was made prior to the delivery of the keys, the burden is on Plaintiffs to specifically make this allegation, with the plausible where and when allegations required by Rule 9(b).

---

[4] These are the same exact core facts that served as a predicate for N.A.S.'s dismissed claims in her first amended complaint.  *Compare* [D.E. 28, ¶¶ 14-15, 18, 20] *with* [D.E. 195, ¶¶ 20-22, 25-26]

In sum, Plaintiffs' conspiracy claim fails because the invasion of privacy counts are barred by res judicata, and because the count is insufficiently pleaded. Accordingly, Defendants' motion to dismiss Count X should be **GRANTED**.

### C.   *The Breach of Contract Claims Do Not Require a More Definite Statement (Counts I and IV)*

Defendants did not move to dismiss Plaintiffs' breach of contract counts. Rather, they moved for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).   In relevant part, Rule 12(e) provides that, "a party may move for a more definite statement of a pleading . . . which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).   Defendants' motion fails to cite any passages that are "so vague or ambiguous" as to necessitate a more definite statement from Plaintiffs, and we cannot find any.   In fact, a reading of the complaint makes clear that Defendants' argument lacks merit.   Plaintiffs have delineated in detail all the elements of their breach of contract claims: they have alleged that an oral contract was entered into, and have specifically enumerated the terms of said contract, as well as the alleged conduct or non-performance that led to its breach.   These pleadings do not require a more definite statement. *See Euro RSCG Direct Response, LLC v. Green Bullion Fin. Servs.*, 872 F. Supp. 2d 1353, 1359 (S.D. Fla. 2012) (more definite statemen not needed where Plaintiff alleged the elements for breach of contract in Counts II and III of the complaint).

That the Third Amended Complaint here includes two different counts of breach of the same contract (Count I by N.A.S. and Count IV by Mr. Hiles) does not render the pleadings unintelligible pursuant to Rule 12(e).   Rather, this singularity

stems from the unusual procedural background of this case and the addition of Mr. Hiles as a new Plaintff.   Whereas in a more conventional scenario Plaintiffs would have filed a joint complaint asserting joint claims from the very beginning, here, Mr. Hiles was joint as a necessary party later on and he brought all of his state court claims with him.   As noted earlier, however, all of his claims arise from the same exact nucleolus of operative fact as do N.A.S.'s, so the repleading of these somewhat duplicative counts is without practical effects.   Mr. Hiles' breach of contact claim is predicated on the same exact contract and the same exact breaches, and is against the same exact party as N.A.S.'s breach of contract claim.   It is clear that the complaint provides Defendants sufficient notice to "reasonably prepare a response."   Fed. R. Civ. P. 12(e).   Accordingly, Defendants' motion for a more definite statement as to Counts I and IV should be **DENIED**.

### D.   *The FDUTPA Claims are Sufficiently Pled (Counts III and VIII)*

In Counts III and VIII of the Third Amended Complaint, N.A.S. and Mr. Hiles respectively advance claims for violations of the FDUTPA against Morada, Odenstein, and Hernandez.   Unlike the fraud and invasion of privacy claims, these FDUTPA counts are claims this Court has never adjudicated.   Defendants move this Court to dismiss these counts with prejudice for failure to meet Rule 9(b)'s heightened pleading standards.   We disagree with Defendants.

Because Plaintiffs' FDUTPA claims sound in fraud, we assess them under the heightened pleading standard of Rule 9(b).   As already noted, Rule 9(b) provides that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake" but that "[m]alice, intent, knowledge,

and other conditions of a person's mind shall be averred generally."   Fed. R. Civ. P. 9(b).   Generally speaking, a pleading that sounds in fraud is sufficiently presented when the complaint establishes the "'who, what, when, where, and how' of the fraud." *Ceithaml*, 207 F. Supp. 3d at 1353.

Accepting all the allegations in the Third Amended Complaint as true, and drawing all reasonable inferences in favor of Plaintiffs, *see Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002), we find that Plaintiffs have sufficiently pleaded their FDUTPA claims.   A FDUTPA claim has three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *McKissack v. Swire Pac. Holdings, Inc.*, No. 09-22086-Civ, 2011 WL 1233370, at *4 (S.D. Fla. Mar. 31, 2011) (citations omitted).   To show causation, "a plaintiff must simply [allege] that 'the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances.'"   *BPI Sports, LLC v. Labdoor, Inc.*, No. 15-62212-Civ, 2016 WL 739652, at *5 (S.D. Fla. Feb. 25, 2016) (quoting *Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565, 567 (11th Cir. 2009)); *see also State, Off. of Att'y Gen., Dep't of Legal Affs. v. Commerce Com. Leasing, LLC*, 946 So. 2d 1253, 1258 (Fla. 1st DCA 2007) (citation omitted).

Defendants' arguments regarding the insufficiency of Plaintiffs' pleadings are unpersuasive.   Plaintiffs have specifically alleged several of the misrepresentations that deceitfully led them to contract with Defendants, the time and manner in which these misrepresentations were made, and the individuals responsible for the assertions of such deceitful statements.   Among other things, the Third Amended Complaint specifically pleads that:

"Defendants represented that and all goods, including furniture and rugs would be manufactured by MORADA new and solely in Italy. . . . These misrepresentations were made by Mr. ODENSTEIN and Mr. HERNANDEZ to Plaintiff N.A.S. and her husband . . . on or around the end of July 2019 when they first commenced meeting and discussing the project[,] . . . [and] continued during the ten-month time period from October 2019 through the summer of 2020 on multiple occasions, including during conversations had between both of them and Plaintiffs onsite at the Project, at MORADA's offices and during telephone conversations."

[D.E. 195, ¶ 51(a)] (alterations added).

In similar fashion, the Third Amended Complaint proceeds to enumerate several additional misrepresentations specifically attributable to Mr. Odenstein and Mr. Hernandez, including that "all fabrics would be performance fabrics and be durable to wear and not stained by wine, coffee or water"; that "the marble table would be six centimeters thick and made from one piece of marble with no glued edged"; and that "MORADA worked on a 100% mark up over out of pocket furniture cost and then offered a 10% discount on the retail price." *Id.* ¶ 51(b)-(d).   In light of these detailed allegations, we find that Defendants' objections are meritless. Indeed, Defendants' argument that "Plaintiffs fail to allege the actual individual who made each alleged misrepresentation[,] [and] the specific time, place, and manner that each representation was made[,]" *see* [D.E. 197, p. 8], is directly contradicted by the passages cited above.   *See* [D.E. 195, ¶ 51].   The Third Amended Complaint plausibly articulates ***the what*** ("Defendants represented that and all goods, including furniture and rugs would be manufactured by MORADA new and solely in Italy"), ***the who*** ("[t]hese misrepresentations were made by Mr. ODENSTEIN and Mr. HERNANDEZ to Plaintiff N.A.S. and her husband"), ***the when*** ("on or around the end of July 2019" and "from October 2019 through the summer of 2020"), and ***the***

*where* and *how* ("on multiple occasions, including during conversations had between both of them and Plaintiffs onsite at the Project, at MORADA's offices and during telephone conversations").   *Id.*   Thus, we hold that Plaintiffs' FDUTPA allegations satisfy Rule 9(b)'s pleading requirements.   *See Paul's Concessions, Inc. v. Pacanins*, 2007 WL 9700528, at *5 (S.D. Fla. Feb. 23, 2007) (holding that fraud allegations were proper where plaintiff pleaded a reasonable delineation of the underlying facts); *Frayman v. Douglas Elliman Realty, LLC*, 515 F. Supp. 3d 1262, 1280 (S.D. Fla. 2021) (fraud-based FDUTPA claim properly pleaded where Plaintff named individuals involved, as well as the time, place and nature of the stamens made).   Accordingly, Defendants' motion to dismiss Counts III and VIII should be **DENIED**.

### E.    <u>**The Unjust Enrichment Claim is Also Sufficiently Pled (Count IX)**</u>

As an alternative to their breach of contract claim, Plaintiffs assert a claim of unjust enrichment against Morada.   Defendants claim that this count should be dismissed for failure to state a claim.    We disagree.

"Under Florida law, a plaintiff may recover money paid by mistake of fact to a defendant if, in equity and good conscience, the defendant should not be allowed to keep the money. The form of such a cause of action is alternatively referred to as one for restitution, unjust enrichment, quasi-contract, or an action for money had and received."   *Equilease Corp. v. Hentz*, 634 F.2d 850, 853 (5th Cir. 1981) (citations omitted).   Generally, "[n]o cause of action in unjust enrichment can exist where the parties' relationship is governed by an express contract. This is because the theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy."   *Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218,

1227 (S.D. Fla. 2010) (quotation marks and citations omitted); *see also Berry*, 497 F. Supp. 2d at 1370 ("[T]he presence of an express contract precludes recovery on a quasi-contractual remedy such as money had and received.").

Nonetheless, "[t]he Florida Supreme Court has previously stated that it is customary to join claims for unjust enrichment and express contract in a single complaint . . . so that a plaintiff who fails to prove the existence of an express contract may still recover for an implied contract." *Transcon. Ins. Co. v. L.F. Staffing Servs.*, *Inc.*, 2008 WL 11333473, at *6 (S.D. Fla. Aug. 13, 2008) (citing *Hazen v. Cobb*, 96 Fla. 151, 117 So. 853, 857–58 (1928)).   "It is only upon a showing that an express contract exists that the unjust enrichment . . . count fails. Until an express contract is proven, a motion to dismiss a claim for . . . unjust enrichment on these grounds is premature." *Mobil Oil Corp. v. Dade Cnty. Esoil Mgmt. Co.*, 982 F. Supp. 873, 880 (S.D. Fla. 1997) (citation omitted); *see also Stock Fraud Prevention, Inc. v. Stock News Info, LLC*, No. 2012 WL 664381, at *10 (S.D. Fla. Feb. 28, 2012) ("At the pleading stage, Plaintiff is not precluded from pleading claims for both breach of contract and money had and received." (citations omitted)). Accordingly, Defendants' motion should be **DENIED** as to Count IX.

## F.   *The Negligent Misrepresentation Claim is not Barred by the Independent Tort Doctrine (Count VI)*

Defendants' motion argues that Plaintiffs' negligent misrepresentation claim must be dismissed as barred by Florida's independent tort doctrine.   Plaintiffs disagree, noting that the independent tort doctrine does not preclude the assertion of torts that preceded the formation of a contract and, as such, are extraneous to the breach of contract claim.   For the reasons that follow, we agree with Plaintiffs.

As Defendants point out, the independent tort doctrine requires a plaintiff to demonstrate that a tort claim is independent of any breach of contract claim.   *See Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399, 408-09 (Fla. 2013) (Pariente, J., concurring) (noting that the principle of the doctrine is to restrict remedies in tort when parties have already specifically negotiated for contractual remedies).   This requirement, however, does not operate as a de facto prohibition on the assertion of tort claims between parties in contractual privity.   *See id.* at 402. This, the Supreme Court of Florida has said, is particularly true in the context of fraud allegations that are pleaded alongside claims for breach of contract:

> The economic loss rule has not eliminated causes of faction based upon torts independent of the contractual breach even though there exists a breach of a contract action. Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from the acts that breached the contract. . . . Fraudulent inducement is an independent tort in that it requires proof of facts separate and distinct from the breach of contract. It normally "occurs prior to the contract and the standard of truthful representation placed upon the defendant is not derived from the contract."

*HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996) (citations omitted); *see also Moransais v. Heathman*, 744 So. 2d 973, 981 (Fla. 1999) (noting that a claim for fraudulent inducement can constitute a tort independent from the underlying breach of contract claim*); Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 537 (Fla. 2004) ("Although parties in privity of contract are generally prohibited from recovering in tort for economic damages, we have permitted an action for such recovery in certain limited circumstances. One involves torts committed independently of the contract breach, such as fraud in the inducement.")

(citation omitted); *Hinton v. Brooks*, 820 So.2d 325, 326 (Fla. 5th DCA 2001) (claim for fraudulent inducement to enter into contract was not barred by Florida law).

Applying this established line of precedent to the facts of this case, we find that Plaintiffs' allegations in support of their negligent misrepresentation claim (Count VI) are separate from the allegations supporting the breach of contract claim and, as such, constitute an independent and actionable tort.

To state a cause of action for negligent misrepresentation, a plaintiff must allege that: "(1) there was a misrepresentation of material fact; (2) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representer intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation. *See Florida Women's Med. Clinic, Inc. v. Sultan*, 656 So. 2d 931 (Fla. 4th DCA 1995) (quoting *Baggett v. Electricians Local 915*, 620 So. 2d 784, 786 (Fla. 2d DCA 1993)).

Plaintiffs have sufficiently pleaded facts that support a claim that Defendants misrepresented material facts that they knew or should have known were false, and that induced Plaintiffs into entering an agreement that resulted in injury to them. *See* [D.E. 195, ¶¶ 69-72].   The complaint specifically alleges that some of these misrepresentations were made when the parties "first commenced meeting and discussing the project," and that Defendants relied on them resulting in injury and damages.   *Id.*   Hence, these acts of alleged misrepresentation crystalized before the parties ever executed the alleged agreement and are distinct from the acts that allegedly breached the terms of the contract.   As alleged, these acts constitute

25

misrepresentations that are extraneous to the contract. They are misrepresentations supported by "proof of facts separate and distinct form the breach of contract," *HTP, Ltd.*, 685 So. 2d at 1239, and that were perpetrated to induce Plaintff into entering the agreement. Hence, Defendants' motion to dismiss Count VI should be **DENIED**. *See Coast to Coast Supply Sols., LLC v. Bank of Am.*, Corp., 2020 WL 2494487, at *2 (M.D. Fla. May 14, 2020) ("[I]t is permissible to have a breach of contract count and a negligence count in the same complaint without running astray of the independent tort doctrine."); *Mejia v. Jurich*, 781 So. 2d 1175, 1178 (Fla. 3d DCA 2001) (holding that, "[W]hen [ ] misrepresentations in the formation of the contract are alleged, as is the case here, the economic loss rule does not bar recovery.") (citations omitted and alterations added).

### G.  *Plaintiffs Do Not Fail to State a Claim as to Odenstein and Hernandez in Their Individual Capacities*

Defendants take issue with the fact that the Third Amendment Complaint names Odenstein, Hernandez and Puche in their individual capacities, but the factual allegations specify that all of their actions were performed in their capacity as agents of Morada.

As we noted in an earlier order, it is clear that the individual claims here amount to pleading of claims in the alternative, which is perfectly permissible under Federal Rule of Civil Procedure 8(d)(3). *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); *Allstate Ins. Co. v. James*, 779 F.2d 1536, 1540 (11th Cir. 1986) ("Litigants in federal court may pursue alternative theories of recovery, regardless of their consistency."). So we agree that the claims against the individual defendants that depend on this

alternative theory survive Rule 12(b)(6) review at this stage.  The motion should thus be **DENIED** in this respect.   But because the individual claims are dependent on an ultra vires theory, Plaintiffs will likely have to elect which remedy and cause of action it will pursue on the tort claims because the corporate and individual claims in this context are mutually exclusive.

### III.     CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendants' motion to dismiss Counts II, V, VII, X and XI of the Third Amended Complaint [D.E. 195] should be **GRANTED**.   Defendants' motion to dismiss Counts I, III, IV, VI, VIII, and IX should be **DENIED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.   Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.   28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec.*, 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 22th day of July, 2022.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge